The STATE of Ohio, Appellee,

v.

BILLUPS, Appellant.

[Cite as *State v. Billups* (1990), 68 Ohio App.3d 248.]

Court of Appeals of Ohio,
Franklin County.

Nos. 89AP–824, 89AP–825.

Decided June 26, 1990.

*Michael Miller*, Prosecuting Attorney, and *Katherine Press*, for appellee.
*James Kura*, County Public Defender, and *John W. Keeling*, for appellant.

JOHN C. YOUNG, Judge.

Appellant, David Billups, was charged with five counts of aggravated robbery with specifications, in violation of R.C. 2911.01, four counts of kidnapping with specifications, in violation of R.C. 2905.01, one count of aggravated burglary with specifications, in violation of R.C. 2913.01, one count of receiving stolen property, in violation of R.C. 2913.51, and one count of carrying a concealed weapon, in violation of R.C. 2923.12. Following a jury trial, appellant was found guilty on all counts. Appellant appeals from his conviction and raises the following five assignments of error:

"Assignment of Error No. One

"The defendant was deprived of his right to due process of law in violation of the United States Constitution and of his statutory and procedural rights when the trial court refused to allow defense counsel to inspect prior out-of-court statements made by the state's witnesses to police officers. The trial court further erred by not making an independent *in camera* determination as to the producibility of such statements and by overruling the defendant's request to preserve the statements at issue for purposes of appeal.

"Assignment of Error No. Two

"The trial court erred when it allowed the state, over objection, to improperly impeach the defendant and further erred when it allowed the state to present evidence not provided pursuant to the defendant's discovery request to rebut the defendant's alibi evidence in violation of due process of law.

"Assignment of Error No. Three

"The trial court erred when it failed to state on the record its essential factual findings, upon the defendant's request, after it overruled the defendant's motion to suppress evidence.

"Assignment of Error No. Four

"The trial court erroneously imposed terms of incarceration for convictions of firearm specifications and for convictions of felonies committed as part of the same transaction.

"Assignment of Error No. Five

"The trial court erred when it refused to instruct the jury on the law of alibi as requested by the defendant."

The charges against appellant arose as a result of three separate incidents. Joe Carnahan testified that on January 17, 1988, at approximately 2:00 a.m., the gas station where he was employed was robbed by a male black who was armed with a gun. Money from Carnahan's wallet was taken in addition to money from the cash register. The police were called and a description of the

robber was given. At approximately 6:00 a.m., on the same day, witnesses testified that two men entered the residence located at 4629 Saint Francis Lane in Whitehall, Ohio, and robbed the occupants at gunpoint. Douglas Greenwald testified that he was at home watching a football game with his wife, Kyla Greenwald, and his mother-in-law, Eleanor Haffner, when two black men entered, produced a gun and took various items from the home plus jewelry and personal items from the women. The police were called and a report was taken which included the witnesses' descriptions of the robbers. Photographs were taken of footprints which were left in the mud and latent fingerprints were lifted from various household items.

The following morning of January 18, 1988, Officer Mark Martin of the Whitehall Police Department saw the appellant using a pay phone near the parking lot of the United Dairy Farmer ("UDF"), a convenience store located at the intersection of East Broad Street and Yearling Road. Appellant resembled the description Officer Martin had been given of a suspect involved in the robbery on Saint Francis Lane. Officer Martin pulled into the UDF parking lot. He reported over the radio that he saw a man who met the physical description of the robbery suspect as given to him earlier. He also requested information on a 1986 gray Nissan with Florida plates which was parked at the UDF near the pay phone.

Appellant hung up the phone and started to walk away from the UDF. Officer Martin stopped him and asked to see some identification. Officer Martin testified that appellant responded that he did not have any identification. Conversely, appellant stated that Officer Martin took his driver's license from him. According to Officer Martin, when he received a radio report that the car with the Florida license plates had been reported as stolen, he requested a back-up cruiser. Appellant, who overheard the radio report, took off running and was later found hiding in a shed behind some nearby apartments. A holster was found in the shed and the keys to the 1986 Nissan were recovered a few feet from the shed.

 In the first assignment of error, appellant asserts that his rights were violated because the prosecution was not required to provide defense counsel with copies of certain statements allegedly made by witnesses to the police concerning their initial descriptions of the robber. Appellant argues further that the trial court should have made an *in camera* inspection of the police records to determine whether the state was required to produce the statements at issue and that those statements should have been preserved for appeal.

The state argues that defense counsel was provided with copies of the witnesses' descriptions of the robber; however, the statements which defense

counsel sought at trial were not discoverable because those statements were actually summaries prepared by the police officers themselves. According to the state, the trial court did make an *in camera* inspection of the records as requested by defense counsel. However, the trial court determined that the records at issue did not contain any inconsistencies, that they were police summaries and that the state was not required to produce them.

Crim.R. 16 provides for the discovery and inspection of certain types of information by both defense counsel and the prosecution during a criminal trial. Crim.R. 16(B)(1)(g) sets forth the procedure to be followed when a demand for a witness's out-of-court statement is made. Crim.R. 16(B)(1)(g) provides as follows:

"(g) In Camera Inspection of Witness' Statement. Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.

"If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies.

"If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examination or comment thereon.

"*Whenever the defense attorney is not given the entire statement, it shall be preserved in the records of the court to be made available to the appellate court in the event of an appeal.*" (Emphasis added.)

Appellant contends that the trial court should have made an *in camera* inspection of the police reports in question to determine whether or not the reports were merely summaries or if the reports contained statements of the witnesses which may have been inconsistent with their testimony at trial. The state, on the other hand, argues that the trial court did make an *in camera* inspection of the reports in question but that the court concluded that the reports did not contain any inconsistencies and that reports were simply summaries.

Upon review of the record, and specifically those pages in the transcript to which the state directs our attention, it is clear that the trial court did make an inspection of *something* per defense counsel's request. Each time that defense counsel requested an opportunity to review certain reports pertaining to the witnesses' descriptions of their robber, the prosecution presented

*something* to the trial court which was reviewed by the trial judge. On each occasion, the trial court ruled that the statements which were reviewed were consistent with the witnesses' testimony at trial. On three occasions, the trial court also commented that at least part, but not necessarily all, of a particular report was a summary. Unfortunately, none of the reports which were reviewed by the trial court was preserved in the record for appeal.

This court agrees with *State v. Jenkins* (1984), 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264, wherein the Ohio Supreme Court found that portions of a police report which recite matters beyond a witness's personal observations are privileged and excluded from discovery under Crim.R. 16(B)(2). *Id.* at 225, 15 OBR at 364, 473 N.E.2d at 316. However, based upon the language used by the trial court, it is possible that at least some portions of the reports reviewed may have contained statements which were made by the witnesses and, therefore, the reports may not have been just summaries. Specifically, the trial court made several references to the witnesses' statements as follows:

" * * * The Court notes [that the statement which has been examined] * * * contains no inconsistencies with his sworn testimony although the statement is much, much briefer than, obviously, any of the testimony that he has testified to.

" * * * *

"THE COURT: There were no inconsistencies under Criminal Rule 16.

" * * * *

"THE COURT: * * * Let the record reflect that there are no inconsistencies with the witness' statement.

" * * * *

"THE COURT: * * * Let the record reflect that the eyewitness' statement is consistent with his testimony at trial.

" * * * *

"THE COURT: Let the record reflect that there were no inconsistencies.

" * * * *

"THE COURT: Let the record reflect that there are no inconsistent statements."

Pursuant to Crim.R. 16(B)(1)(g), when the court determines that inconsistencies do not exist, the statement is not given to the defense attorney. However, whenever the defense attorney is not given the entire statement, the statement is preserved in the record of the case to be made available to the appellate court in the event of an appeal.

Clearly, the trial court erred in not preserving these statements in the record so that they would be available for review. Because the record indicates that these police reports may have contained some statements made by witnesses which should have been provided to defense counsel, appellant has clearly been prejudiced. Accordingly, appellant's first assignment of error is well taken and is sustained.

 In the second assignment of error, appellant argues that the trial court erred when it allowed the state, over objection, to improperly impeach the appellant. Appellant also contends that the trial court erred when it allowed the state to present evidence to rebut appellant's alibi evidence without providing notice of such evidence beforehand.

Audrey Brown and Stephanie Griffin, two students at Central State University who were acquaintances of appellant, testified that appellant was frequently at the campus on weekends. Neither one of them could say for certain that appellant was on campus January 17, 1988 nor could they say for certain that he was not on campus January 17, 1988.

Appellant testified on his own behalf at trial. According to appellant's testimony, he was at Central State University in Wilberforce, Ohio, on Sunday, January 17, 1988, watching the football playoff games when the robberies occurred. He arrived at the university on Saturday, January 16, 1988 and he did not leave until 1:00 or 2:00 a.m. Sunday, January 17, 1988 after the football games had ended.

On cross-examination, the prosecutor inquired whether or not appellant had discussed an alibi with Blaise Baker when Baker was his attorney. Appellant answered that he did not discuss any alibi with Baker. Appellant answered further that, if Baker filed a notice of alibi, as the prosecutor inferred that he had, then he did so without the appellant's permission. Appellant consistently maintained that he never gave Baker the information contained in the notice of alibi which was filed by Baker. Appellant responded similarly when the prosecutor inquired as to whether or not he had knowledge that Terry Sherman, another attorney, had also filed a notice of alibi in appellant's case which differed from the one filed by Baker. The prosecutor accused the appellant of now giving the court a third alibi.

The trial court allowed the amended notice of alibi, filed by Sherman, to be admitted into evidence over the objection of defense counsel and without any foundational testimony by Sherman. Sherman objected to being called as a witness because of the attorney-client privilege. He indicated that the information contained in the notice of alibi was a result of his own investigation. Baker, appellant's former counsel, was called by the prosecution as a witness and was permitted to testify, over objection of defense counsel, as follows:

"Q. (By Mr. Sheeran) Mr. Baker, in your representation of Mr. Billups, did you have an occasion to file a notice of alibi in this case?

"A. I did.

"Q. Sir, I'm going to hand you what has been marked as a notice of alibi. I ask you if you recognize that?

"A. I do.

"Mr. Meyers: Objection, your honor, to this entire line, just so it is on the record.

"The Court: So as to what?

"Mr. Meyers: To this whole witness, to the questions that he is getting into.

"The Court: Overruled for the limited purpose.

"Mr. Sheeran: Thank you, your honor.

"Q. (By Mr. Sheeran) Is this your signature?

"A. It is.

"Q. And can you read the sentence that begins with the words 'in regard to'? Just that one sentence.

"A. 'In regard to January the 17th of 1988, the defendant states that he was with friends at an address located at 1215 Brentnell, Columbus, Ohio, 43219.'

"Q. And with regard to January 17th of 1988, that is the alibi that you filed in his behalf, correct?

"A. That's correct.

"Q. And prior to filing that, did you in fact—did you in fact have conversations or consultations with the defendant concerning that alibi?

"A. Yes.

"Q. And it was after conversing with the defendant that you filed that notice of alibi on May the 11th of 1988, is that correct?

"A. That's correct."

The trial court permitted the above testimony of Baker and admission of the amended notice of alibi filed by Sherman pursuant to Evid.R. 801(D)(2)(d), which provides as follows:

"(D) Statements Which Are Not Hearsay. A statement is not hearsay if:
" * * *

"(2) * * * The statement is offered against a party and is * * * (d) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship * * *."

The state used the notices of alibi and the testimony of Baker to impeach appellant's credibility. The prosecutor accused appellant of giving three different alibis for his whereabouts on January 17, 1988. Appellant emphatically denied telling Baker and Sherman the information contained in the notices of alibi. Appellant denied that he had any knowledge that these attorneys were going to or had filed notices of alibi in his case. Appellant denied giving his permission for his attorneys to file those notices of alibi. The prosecution, however, asked that appellant be personally accountable for those alibis, on the basis of agency principles, by virtue of Evid.R. 801(D)(2)(d).

Appellant argues that because the testimony of Baker and the notices of alibi were used to "impeach" appellant's testimony, as if appellant had previously made these statements, Evid.R. 613 should have been applied instead of Evid.R. 801(D)(2)(d). Evid.R. 613 provides as follows:

"(A) Examining Witness Concerning Prior Statement. In examining a witness concerning a prior statement made by him, whether written or not, the statement need not be shown nor its contents disclosed to him at that time, but on request the same shall be shown or disclosed to opposing counsel.

"(B) Extrinsic Evidence of Prior Inconsistent Statement of Witness. Extrinsic evidence of a prior inconsistent statement by a witness is *not admissible unless the witness is afforded a prior opportunity to explain or deny the same* and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(D)(2)." (Emphasis added.)

The record reveals that the prosecutor questioned appellant at length concerning the notices of alibi prior to the testimony of Baker and the introduction into evidence of the amended notice of alibi. Appellant was afforded the opportunity to explain or deny that he gave this information to his attorneys concerning his whereabouts on January 17, 1988. As such, it becomes a matter of credibility as to what the trier of fact believes the appellant said or did not say. The requirements of Evid.R. 613(B) were met in this instance.

Appellant argues further that the trial court erred when it allowed the prosecution to present evidence to rebut appellant's alibi without first providing defense counsel with notice of such evidence in discovery. Upon review of the record, this court finds that the prosecution complied with Crim.R. 16 and that there was no error on the part of the trial court.

Accordingly, appellant's second assignment of error is not well taken and is overruled.

In the third assignment of error, the appellant argues that the trial court failed to state its essential factual findings on the record when it overruled appellant's motion to suppress evidence.

The trial court heard evidence on several motions, some of which had been filed by counsel on behalf of appellant and some of which had been filed *pro se* by the appellant. On page 24 of the May 30, 1989 transcript, the trial court indicated as follows:

"THE COURT: * * * But we will have a hearing at this point, then, on the motion to suppress I.D. and the evidence and statements—when I say that— there was some other motions that have been filed by the defendant, pro se, that are part and parcel to those motions; and they will not be considered separately. Such as whether or not there was probable cause for the arrest, esculpatory [*sic*] evidence, that sort of thing."

The trial court ruled on the motion to suppress evidence at pages 97–101 of the transcript; the trial court ruled on the motion to suppress statements and directed the prosecution to turn over any exculpatory statements at pages 102–104; and the trial court ruled on the motion to suppress identification at pages 242–243. Appellant's argument on appeal concerns the fact that the trial court did not state any factual findings concerning appellant's *pro se* motion on the probable cause to arrest issue.

In *State v. Waddy* (Nov. 2, 1989), Franklin App. No. 87AP–1159, unreported, 1989 WL 133508, appeal pending in case No. 90–22, this court stated as follows:

"Essential findings are the fundamental or necessary reasons that the trial court relied upon to reach its final determination on the issue. They are more than mere conclusions of law but need not be as specific as special findings of fact. To comply with Crim.R. 12(E), the trial court should state on the record the reasons for its determination. These reasons need to be sufficiently specific to permit a reviewing court to understand the reason the trial court ruled in the manner which it did. It is not necessary for the trial court to issue findings of fact and conclusions of law in ruling upon pretrial motions since Crim.R. 12(E) requires only 'essential findings.'" *Id.* at 4177.

Upon review of the record, this court finds that the trial court failed to state, on the record, its essential findings in ruling upon appellant's motion concerning whether there was probable cause to arrest appellant. However, the failure to state essential findings has not been demonstrated to be prejudicial. *Waddy, supra.* Crim.R. 52(A) provides:

"(A) Harmless Error. Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."

The evidence is sufficient to demonstrate the reasons why the trial court overruled appellant's motion. Officer Mark Martin of the Whitehall Police Department testified as follows: He observed appellant at a pay telephone at the United Dairy Farmer; appellant resembled the description of a man who had been involved in a robbery; near to appellant was a Nissan with Florida license plates; Officer Martin called in the plates; as appellant walked from the UDF parking lot, Officer Martin asked him for identification and told him that he matched the description of a robbery suspect; appellant responded that he did not have identification; appellant tried to walk away, but Officer Martin repositioned his cruiser to cut in front of appellant; as Officer Martin spoke with appellant, the report came over the police radio that the car with the Florida license plates had been reported stolen; as soon as the report was broadcasted, appellant ran from Officer Martin and disappeared behind some bushes across the street. Appellant was apprehended later by Whitehall police officers who responded to Officer Martin's call for assistance. Appellant was found hiding in a shed behind some apartments. A large roll of bills was removed from appellant's pockets, a holster was recovered from the shed and the car keys for the Nissan with Florida license plates were located a few feet from the shed under some bushes. Probable cause existed to arrest appellant.

Accordingly, appellant's third assignment of error is not well taken and is overruled.

In the fourth assignment of error, appellant asserts that the trial court erred in its entry wherein ten three-year terms of actual incarceration were imposed for firearms specifications. For the reasons which follow, this court agrees.

R.C. 2929.71 provides for the sentencing of an additional three-year term of actual incarceration for offenses involving a firearm. R.C. 2929.71 provides as follows:

"(B) If an offender is convicted of * * * two or more felonies and two or more specifications charging him with having a firearm on or about his person or under his control while committing the felonies, each of the three-year terms of actual incarceration imposed pursuant to this section shall be served consecutively with, and prior to, the life sentences or indefinite terms of imprisonment imposed pursuant to section 2907.02, 2907.12, 2929.02, or 2929.11 of the Revised Code, unless any of the felonies were committed as part of the same act or transaction. If any of the felonies were committed as part of the same act or transaction, only one three-year term of actual incarceration shall be imposed for those offenses, which three-year term shall be served consecutively with, and prior to, the life sentences or indefinite

terms of imprisonment imposed pursuant to section 2907.02, 2907.12, 2929.02, or 2929.11 of the Revised Code."

Appellant was involved in two robberies, one at the gas station and one at 4629 Saint Francis Lane. Accordingly, appellant may be sentenced to only two consecutive three-year terms of actual incarceration, one per transaction. Appellant's fourth assignment of error is sustained.

■ In the fifth assignment of error, appellant contends that the trial court erred when it refused to instruct the jury on the law of alibi as requested by defense counsel. The trial court instructed the jury on alibi as follows:

"The defendant claims that he was at some other place at the time that the offense occurred. This is known as an alibi. The word alibi means elsewhere or a different place.

"If the evidence fails to establish that the defendant was elsewhere, such failure does not create an inference that the defendant was present at the time when and at the place where an offense may have been committed. If after a consideration of the evidence of alibi, along with all of the evidence, you are not convinced that the state has proved each element of the offense beyond a reasonable doubt, you must return a verdict of not guilty as to each of those charges."

Defense counsel submitted a proposed instruction on the charge of alibi which was rejected by the trial court. Although appellant admits that the first paragraph was properly rejected, appellant maintains that the second paragraph was a correct statement of the law and should have been given. The second paragraph of the proposed instruction reads, as follows:

"By raising the matter of alibi, the defendant does not shift the burden of proof to himself. It is not incumbent upon the defendant to establish that he was not present at the scene of the crime, or that he was at some other place. The burden of proving that defendant was at the place where the prosecution claims a crime occurred is on the prosecution and that burden stays on him. Even if the defendant's evidence concerning alibi doesn't raise a reasonable doubt in your mind, the prosecution still must convince you beyond a reasonable doubt that the defendant was at the place at the time the prosecution claims that the crime was commited [*sic*], and that he commited [*sic*] the offense as charged."

Defense counsel objected to the charge given by the trial court as follows:

"With respect to the alibi issue, although I know I have tendered that, I do, at this juncture, request that it be clear to this jury that the defense had no burden on that."

The trial court responded that the charge was correct as given and that the court would not reinstruct the jury as counsel requested.

In *State v. Mitchell* (May 2, 1989), Franklin App. No. 88AP–695, unreported, 1989 WL 47083, this court held that the trial court erred in refusing the defendant's requested jury instructions on alibi under similar circumstances. Appellant argues that this court should follow *Mitchell.* Although in *Mitchell* this court found that the alibi instruction as given by the trial court was defective, this court concurred that the defective instruction was not so prejudicial to defendant to deny him a fair trial and require a new trial. See Crim.R. 52(A).

The trial court in the case *sub judice* did refer to alibi as a "claim" of appellant which this court found can be misleading in the context used. *Mitchell, supra.* However, a charge to the jury must be considered as a whole and not simply by its component parts. *State v. Price* (1979), 60 Ohio St.2d 136, 14 O.O.3d 379, 398 N.E.2d 772, paragraph two of the syllabus. Although the second paragraph of the requested jury instruction was a correct charge, most of it was covered by the charge the court gave. Defense counsel did point out some deficiencies in the charge as given by the trial court, as well as the fact that the trial court could have specified that there was no burden of proof on defendant.

However, upon review of the charge as a whole, we find no probable or apparent prejudice resulting from the deficiency of the alibi charge. Accordingly, appellant's fifth assignment of error is not well taken and is overruled.

Based on the foregoing, appellant's first and fourth assignments of error are sustained and appellant's second, third and fifth assignments of error are overruled. Because of the nature of the error involved in the assignments of error sustained by this court, this matter is reversed and remanded to the Franklin County Court of Common Pleas where appellant is to be granted a new trial.

*Judgment reversed*
*and cause remanded.*

WHITESIDE and PEGGY BRYANT, JJ., concur in judgment.

WHITESIDE, Judge, concurring in judgment.

Although I concur in the sustaining of the first assignment of error and the reversal and remand for a new trial, I would also sustain the second and fifth assignments of error.

Assuming there to be relevance, the evidence as to change of alibi through changes in the notice of alibi can be accomplished through introduction of the

notices themselves into evidence. Only if appellant objected to admissibility could the issue of defense-counsel authority arise. This would initially be an issue for the court out of the presence of the jury. See Evid.R. 104(A).

Here, however, the trial court not only permitted cross-examination of appellant as to confidential communications to his attorneys, but, also, permitted the prosecution to call and cross-examine defendant's attorneys, both one who had been replaced and the actual trial attorney, as to confidential communications between appellant and his attorneys. Evid.R. 501 preserves such privilege. The filing of a notice of alibi does not waive the attorney-client privilege. Without belaboring the point, the second assignment of error should be sustained and, hopefully, the evidentiary rulings will differ upon retrial.

As to the fifth assignment of error, the trial court refused appellant's request before and after the charge that the trial court instruct the jury that appellant has no burden of proof with respect to an alibi "defense." Contrary to the prosecution's contention, the trial court did not cover the question of burden of proof as to alibi in the charge as actually given but, at best, left the question open for speculation by the jury.

The alibi evidence was crucial to appellant's defense. Under the circumstances, the refusal to charge as to burden of proof was prejudicial, especially in connection with the errors raised by the first and second assignments of error. The alibi evidence, if believed, would have required a finding that appellant was not present at the scene of at least one of the crimes and, thus, could not be guilty. Appellant also presented expert testimony that footprints found at the scene of that crime could not have been made by appellant's shoes. Under such circumstances, the error in refusing to instruct that appellant had no burden to prove his alibi cannot appropriately be found nonprejudicial. The fifth assignment of error should also be sustained.

BRYANT, J., concurs in the foregoing concurring opinion.