JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Carmella Barnes ("defendant"), appeals from the judgment entered pursuant to a jury verdict finding her guilty of assault and patient abuse. For the following reasons, we affirm the decision of the trial court.
 {¶ 2} From approximately September 2000 through December 10, 2004, defendant was employed as a rehabilitation aide at Grant House, one of several group homes for mentally retarded adults operated by Rose Mary Center. Her duties included assisting the residents with their daily activities.
 {¶ 3} On the morning of December 10, 2004, defendant, as well as two other rehabilitation aides, Alice Jackson and Jennifer Lavender, were preparing to transport the patients to the workshop. One of the patients, J.J., pulled a bucket of toys down from a closet shelf and spilled them on the floor. J.J. is severely mentally retarded and has no verbal skills. Defendant became angry with J.J. and began to punch him in the back and head, all the while yelling at him to clean up the toys. Defendant then got a plastic clothes hanger and began to hit J.J. with it on his head, back, and arms. On December 17, 2004, defendant was arrested on suspicion of assault.
 {¶ 4} On February 2, 2005, the Cuyahoga County Grand Jury indicted defendant on one count of patient abuse in violation of R.C. 2903.34 and one count of assault on a functionally impaired person in violation of R.C. 2903.13. Alice Jackson was also charged with one count of complicity to commit assault for her participation in the events.
 {¶ 5} On August 22, 2005, a bench trial began. The State first called Jennifer Lavender ("Lavender") who testified to the following: She was a new hire at Grant House and was working with defendant as a rehabilitation aide. On the morning of December 10, 2004, she saw J.J. spill the toys on the floor. She was cleaning up the toys when defendant arrived at the scene and started to yell at J.J. Defendant told Lavender to "close her eyes" and then began punching J.J. on the back of his head. Defendant then asked Jackson for a hanger and began hitting J.J. with it about his head and back. As a result of the beating, J.J. began crying, making noises, and drooling from the mouth. Shortly thereafter, Lavender reported the incident to her supervisor Melissa Andrusky.
 {¶ 6} Next, Melissa Andrusky ("Andrusky") testified to the following: She is a licensed practical nurse and is assigned as the group nurse at Grant House. On the morning of December 10, 2004, Lavender came into her office and reported that she had seen defendant hitting J.J. Lavender was visibly upset. Andrusky contacted the house manager, who in turn, notified the Euclid Police Department. Another staff member retrieved J.J. from the workshop. Andrusky performed two "body checks" on J.J. but could not discern any visible injuries. She noted that at the time of the alleged beating, J.J. was wearing a heavy sweater, t-shirt, blue jeans, and tennis shoes. She testified that, based on her 16 years at Rose Mary Center, patients who have been involved in altercations do not always exhibit injuries. She stated that it depended on where the patient was hit, what the patient was wearing, and how hard the patient was hit. She also noted that J.J. was a dark-skinned African-American, which could have impaired her ability to see any bruises or markings.
 {¶ 7} For the defense, Alice Jackson testified. She is a rehabilitation aide at Grant House. She saw J.J. spill the toys on the floor and helped to clean them up. She admitted to giving defendant a hanger but denied seeing defendant hit J.J. with it or her fist. She stated that Lavender was helping patients put their coats on and could not have seen what happened in the room.
 {¶ 8} Next, Patricia Linville testified. She is a direct care worker at Rose Mary Center and assists the residents in their day-to-day living. On the morning of December 10, 2004, she was asked to assist Andrusky in performing a "body check" on J.J. She could not discern any visible injuries on J.J.
 {¶ 9} Finally, defendant testified in her own behalf. Defendant admitted that J.J. spilled the toys on the floor. However, she denied any physical aggression towards him, either with her fists or a plastic hanger. She admitted that Jackson handed her a plastic hanger, but states that she merely put it away in the laundry room. Defendant admits that there was no negative history between her and Lavender but opined that Lavender was making up the story because she wanted more hours at Grant House.
 {¶ 10} On August 30, 2005, defendant was found guilty of one count of patient abuse and one count of assault as charged in the indictment. Defendant was sentenced to one year of community control. Defendant now appeals and raises three assignments of error for our review.
 {¶ 11} "I. The court's decision finding the appellant guilty of patient abuse and assault was not supported by sufficient evidence when there was no evidence of physical harm whatsoever."
 {¶ 12} In this assignment of error, defendant argues that the State failed to present sufficient evidence to support her convictions for patient abuse and assault.
 {¶ 13} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." To determine whether the evidence before a trial court was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the State. State v.Dennis (1997), 79 Ohio St.3d 421, 430.
 {¶ 14} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Thompkins (1997), 78 Ohio St.3d 380,386.
 {¶ 15} Here, defendant was charged with assault and patient abuse. The offense of assault is defined by R.C. 2903.13, which provides, in pertinent part, that "no person shall knowingly cause or attempt to cause physical harm to another." The offense of patient abuse is defined by R.C. 2903.34 and provides in pertinent part, that "no person * * * who is an * * * employee of a care facility shall knowingly cause physical harm or recklessly cause serious physical harm * * * to a person by physical contact with the person." See, also, R.C. 2903.33(B).
 {¶ 16} Defendant argues that there is insufficient evidence to convict her of assault and patient abuse because there is no physical evidence that any physical harm was caused to J.J. Specifically, no marks, cuts, or bruises were discovered in the two "body checks" that were performed on him following the alleged incident.
 {¶ 17} Physical harm occurs when there is "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). There is no requirement that pain must be demonstrated by an outward physical manifestation in order to constitute physical harm. See State v.Grimes, Cuyahoga App. No. 87037, 2006-Ohio-4262; State v.Hustead (1992), 83 Ohio App.3d 809; State v. Lohr, Lorain App. No. 03CA008265, 2004-Ohio-1609; State v. Perkins (Mar. 27, 1998), Portage App. No. 96-P-0221 (any act, even a slap that invokes a grimace, can constitute physical harm); Dayton v.Hadley (June 2, 1986), Montgomery App. No. 9509, citing Legislative Service Note to R.C. 2901.01 (stating that precedent trauma is not a requirement to a finding of physical harm). Furthermore, "when there is no tangible, physical injury such as a bruise or cut, it becomes the province of the [trier of fact] to determine whether, under the circumstances, the victim was physically injured, after reviewing all of the evidence surrounding the event." Perkins, supra.
 {¶ 18} Construing the testimony in a light most favorable to the State, as we are required to do, there was sufficient evidence which demonstrated that J.J. suffered physical harm. J.J. is unable to communicate verbally. Therefore, he was unable to testify about any pain he suffered from defendant's actions. However, Lavender testified that J.J. moaned, drooled, and cried as a result of defendant's actions. Therefore, there was sufficient evidence which, if believed, demonstrated that J.J. was physically injured, even if there were no markings upon him. See Id. Accordingly, the trial court properly denied defendant's motion for acquittal on this ground.
 {¶ 19} Defendant's first assignment of error is overruled.
 {¶ 20} "II. The court's decision finding the appellant guilty of patient abuse and assault was against the manifest weight of the evidence."
 {¶ 21} In this assignment of error, defendant argues that her convictions for patient abuse and assault are against the manifest weight of the evidence.
 {¶ 22} While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion. State v.Thompkins, supra at 390. When a defendant asserts that her conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins (1997),78 Ohio St.3d 380, 387.
 {¶ 23} Here, Lavender testified that she saw defendant become angry with J.J. and hit him repeatedly with her fists and a plastic hanger. Andrusky testified that Lavender reported the incident to her shortly after it happened. Jackson admitted that she handed defendant a hanger but denied seeing her hit J.J. with it. Defendant admitted that she had a hanger in her hand, but denied hitting J.J. with it or her fists. Defendant also states that there was no physical evidence of any injury to J.J. and that Lavender was making up the story to get more hours at work. Under State v. DeHass (1987), 10 Ohio St.2d 230, the trier of fact was free to accept or reject any or all of the testimony of the witnesses and assess the credibility of those witnesses. Accordingly, whether Lavender's testimony was credible or not was for the trier of fact to determine. Id.
 {¶ 24} We find that a rational trier of fact could believe that defendant did not hit J.J., that J.J. did not suffer any physical injury, that defendant was merely putting the plastic hanger away, and that Lavender was lying. However, a rational trier of fact could also reasonably find that defendant did physically harm J.J., especially in light of the fact that she admitted she was holding a plastic hanger and that there was no credible reason that Lavender would fabricate such a story. A rational trier of fact could also reasonably find that J.J. did suffer physical injury and that he did not receive any visible welts or bruises because the plastic hanger was not sturdy, and he was a large, dark-skinned man wearing several layers of clothing. Accordingly, we find that the trial court did not clearly lose its way and create a manifest miscarriage of justice when it determined that defendant did knowingly cause physical harm to J.J. in violation of R.C. 2903.13 and R.C. 2903.34.
 {¶ 25} Upon careful review of the testimony and evidence presented at trial, we hold that the trial court did not act contrary to the manifest weight of the evidence in finding defendant guilty of patient abuse and assault. Substantial, competent, and credible evidence supports the court's verdict.
 {¶ 26} Defendant's second assignment of error is overruled.
 {¶ 27} "III. The court erred in failing the [sic] preserve the incident report for appeal after determining that no inconsistencies existed."
 {¶ 28} In defendant's third assignment of error, she maintains that the trial court erred in failing to preserve the written statement of Lavender for purposes of appeal because it contained inconsistent statements. Defendant contends she was prejudiced because Lavender was the only witness to provide evidence of her guilt. In support, defendant cites to and relies upon Crim.R. 16 and State v. Billups (1990),68 Ohio App.3d 248, which holds that witness statements that are found to be not inconsistent must be made part of the record on appeal.
 {¶ 29} Defendant's reliance upon Crim.R. 16 and Billups are misplaced. First, pursuant to Crim.R. 16(B)(1)(g), the written statement of a witness must only be preserved when the defense attorney is not given the entire statement during the in-camera inspection. Here, the record reflects that a sidebar discussion was held with all parties and that counsel for defendant was able to review Lavender's entire statement for any inconsistencies.[1] Next, in Billups, the defense attorney was not allowed to participate in the in-camera inspection of the witness statement. Here, unlike in Billups,
defendant's attorney did participate in the in-camera inspection and was able to review Lavender's entire statement for any inconsistencies. Accordingly, the trial court was not required to preserve the written statement for appellate review.
 {¶ 30} Defendant's third assignment of error is overruled. Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kenneth A. Rocco, J., Concurs.
Mary Eileen Kilbane, J., Dissents (See dissenting opinion attached.)
[1] Tr. 23.