[Cite as *State v. Webb*, 2025-Ohio-456.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff- Appellee, | : | |
| v. | : | No. 113941 |
| MICHAEL WEBB, | : | |
| Defendant-Appellant. | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 13, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-682892-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Matthew W. Moretto, Assistant Prosecuting Attorney, *for appellee.*

Charles Ruiz-Bueno Co., LPA, and J. Charles Ruiz-Bueno, *for appellant.*

MICHELLE J. SHEEHAN, P.J.:

{¶ 1} Defendant-appellant, Michael Webb ("Webb"), was convicted by a jury of one count of patient abuse, a felony of the fourth degree, in violation of

R.C. 2903.34(A)(1).  On appeal from his conviction, he raises two assignments of error for our review:

> 1. The evidence at trial was insufficient to sustain a verdict against Defendant-Appellant.
>
> 2. Prejudicial plain error arose where neither the trial court nor Defendant-Appellant's counsel addressed the affirmative defense/defense of another where the record of testimony/facts supported such.

After a thorough review of the record, we find that the evidence presented at trial was sufficient to support a conviction for patient abuse.  We also find that no plain error occurred with respect to the lack of a jury instruction for self-defense because Webb denied he committed the elements to support a claim of patient abuse.  Self-defense requires the admission of all essential elements of the charged crime but with the legal recognition that the accused's actions were justified under the circumstances.  Thus, the affirmative defense of self-defense was inapplicable as a result of Webb's trial strategy.  Accordingly, we overrule Webb's two assignments of error and affirm his conviction.

## I. Procedural History and Relevant Facts

{¶ 2}    Appellant Webb and his codefendant Monique Williams ("Williams") were indicted together in a three-count indictment.  Each were charged with one count of patient abuse and one count of tampering with evidence.  After a jury trial was held, Webb was found guilty of one count of patient abuse, a felony of the fourth degree.  Williams was found not guilty of all charges.  Webb was sentenced to

6 months of community-control sanctions. The charges stem from the following facts adduced at trial.

{¶ 3} In the fall of 2018 Webb was employed as a therapeutic program worker at the Warrensville Developmental Center. The Warrensville Developmental Center is a facility that serves adults that have been identified with intellectual or developmental disabilities. As part of his employment, Webb was tasked with providing and assisting residents in his care with everything they needed, including daily living skills, oversight, and supervision. Webb was trained in the use of proper support techniques and restrictive measures that may be utilized in hostile situations.

{¶ 4} On November 22, 2018, Webb, along with his coworker Williams, became involved in a physical altercation with a resident, Gregory Wright ("Gregory"). Gregory was diagnosed with autism at a young age. He has also been diagnosed with physical aggression disabilities. The testimony at trial revealed that Williams attempted to stop Gregory from accessing a locked cabinet where his food was stored. In response Gregory became physically aggressive towards her. Webb assisted in attempting to restrain Gregory.

{¶ 5} The incident was recorded by surveillance video. Shane Posey ("Posey"), an investigative agent at the Warrensville Developmental Center, trained employees in the use of proper restraint techniques. Upon viewing the surveillance video, Posey testified that Webb used several unapproved holds during the incident. These holds included the use of a supine hold, which involved holding Gregory to

the ground with his back to the floor, grabbing Gregory at the back of his neck, grasping Gregory in a nonstationary bear hug, tossing Gregory, and standing on Gregory's arm.

{¶ 6} The following day, Posey took several photographs documenting Gregory's injuries. These photographs were introduced at trial. Posey testified that the photographs show a scratch on Gregory's arm, a scratch on his forehead, a scratch on his left forearm, and a scratch on Gregory's thumb. The State also introduced an initial incident report wherein the nurse that treated Gregory after the incident indicated that Gregory had a small scratch on his thumb.

{¶ 7} Webb challenges his conviction for patient abuse on appeal to this court.

## II. Law and Analysis

### A. Webb's conviction was supported by the evidence

{¶ 8} In his first assignment of error, Webb claims that the evidence presented at trial was insufficient to support his conviction for patient abuse, in violation of R.C. 2903.34(A)(1). Specifically, Webb claims that the State failed to present sufficient evidence to support the following elements of the offense: (1) that he knowingly caused physical harm to Gregory Wright; and (2) that Gregory Wright suffered physical harm as a result of his actions.

{¶ 9} We review challenges to the sufficiency of evidence admitted at trial "to determine whether the evidence, if believed, would convince the average person of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d

259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* When reviewing the evidence, we are mindful that circumstantial and direct evidence "possess the same probative value." *Id.* at 272. Our review of the evidence is not to determine "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997) (Cook, J., concurring).

{¶ 10} Webb challenges the sufficiency of the evidence with respect to two particular elements of the offense. They will be addressed below.

**i. Mens rea — knowingly**

{¶ 11} R.C. 2903.34 provides, in relevant part:

(A) No person who owns, operates, or administers, or who is an agent or employee of, a care facility shall do any of the following:

(1) Commit abuse against a resident or patient of the facility.

{¶ 12} The term "abuse" is defined as "knowingly causing physical harm or recklessly causing serious physical harm to a person by physical contact with the person or by the inappropriate use of a physical or chemical restraint, medication, or isolation on the person." R.C. 2903.33(B).

{¶ 13} Webb argues that the evidence at trial demonstrates that the only knowing and purposeful act he engaged in was to protect his coworker from harm

and that the evidence fails to support the requisite mens rea requirement of the statute. Webb's interpretation of the "knowingly" mens rea requirement is incorrect. The evidence is not required to demonstrate that an offender acted with specific purpose or intent in order to demonstrate that the offender acted "knowingly." Rather, "[a] person acts knowingly, *regardless of purpose*, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." (Emphasis added.) R.C. 2901.22(B). As such, the "'mental element of knowledge does not require an inquiry into the purpose for an act, but, involves the question of whether an individual is aware that his or her conduct will probably cause a certain result or will probably be of a certain nature.'" *State v. Wilson,* 2023-Ohio-1042, ¶ 31 (8th Dist.), quoting *In re F.D.,* 2015-Ohio-2405, ¶ 16 (8th Dist.).

{¶ 14} "'A defendant's knowledge may be inferred from the totality of the surrounding circumstances.'" *State v. Evans,* 2023-Ohio-2297, ¶ 22, quoting *State v. Nicholson,* 2022-Ohio-2037, ¶ 184. Upon reviewing the evidence presented at trial, we find that a reasonable finder of fact could find that Webb was aware that his actions would probably result in physical harm to Gregory.

{¶ 15} Video surveillance of the incident was presented at trial. Chandler Cole ("Cole") was the special agent from the Attorney General's Office assigned to this case. Upon reviewing the video, he testified that Williams is seen striking

Gregory three times, and Gregory becomes physically aggressive towards Williams.[1] Webb arrives and is able to temporarily deescalate the situation. Cole further testified that shortly thereafter, Webb is seen pushing Gregory twice, eventually pushing him to the ground, grabbing Gregory by the back of the neck and pushing him down, tossing Gregory into a love seat, and stepping on Gregory's arm at one point.

{¶ 16} Evidence was also presented that Webb had received training in the proper restraint techniques to be utilized by the staff when confronting residents. Posey testified that the video surveillance of the incident demonstrated Webb using several unapproved behavioral holds, including standing on Gregory's arm, tossing him to the ground, engaging in a bear hug while moving, and supine holds that occur when a person is held to the ground with their back on the floor.

{¶ 17} Viewing the evidence in a light most favorable to the State, including Webb's training, his use of impermissible holds and restraints, and the video presented at trial, a rational trier of fact could have determined that Webb was aware that his conduct would cause physical harm to Gregory. As such, the evidence was

---

[1] Williams testified that she was attempting keep Gregory from opening the cabinet and these strikes were her blocking his punches.

sufficient to support a finding that Webb had knowledge that his actions would cause Gregory physical harm.

### ii. Physical harm

{¶ 18} Webb next claims the evidence is insufficient to demonstrate that Gregory sustained physical harm as a result of the altercation. We disagree.

{¶ 19} Physical harm occurs when there is "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). "There is no requirement that pain must be demonstrated by an outward physical manifestation in order to constitute physical harm." *State v. Barnes,* 2006-Ohio-5239, ¶ 17; *accord State v. Perkins,* 1998 Ohio App. LEXIS 1213, *6 (11th Dist. Mar. 27, 1998) (any act, even a slap that invokes a grimace, can constitute physical harm). Furthermore, "'when there is no tangible, physical injury such as a bruise or cut, it becomes the province of the [trier of fact] to determine whether, under the circumstances, the victim was physically injured, after reviewing all of the evidence surrounding the event.'" *Barnes* at ¶ 17, quoting *Perkins*.

{¶ 20} After reviewing the evidence presented at trial there is sufficient evidence, if believed, to demonstrate that Gregory suffered physical harm as a result of Webb's actions. As discussed above, video surveillance demonstrated that Webb and Gregory were engaged in a physical altercation that included Gregory being

tossed to the ground by Webb, Webb standing on Gregory's arm, and Webb using his body weight to pin Gregory to the ground.

{¶ 21} Photographs were also introduced at trial indicating multiple scratches on Gregory's head, thumb, elbow, and wrists. An original incident report was also introduced at trial wherein the nurse that treated Gregory after the incident indicated that Gregory had a small scratch on his thumb.

{¶ 22} Viewing this evidence in a light most favorable to the State, a rational trier of fact could reasonably find that Gregory sustained physical harm as a result of Webb's actions. Since the evidence in the record is sufficient to support Webb's conviction for patient abuse, his first assignment of error is overruled.

**B. The trial court's decision not to include a self-defense instruction to the jury, where none had been requested, was not error, let alone plain error**

{¶ 23} In his second assignment of error, Webb claims that plain error occurred when neither his trial counsel nor the trial court raised the affirmative defense of self-defense/defense of another on his behalf. However, the defense he presented at trial, that the evidence did not support a conviction for patient abuse, is incompatible with a self-defense claim. He was therefore precluded from raising a self-defense claim while simultaneously alleging the evidence was insufficient to support the elements of patient abuse. As a result, it cannot be said that the failure to instruct the jury on self-defense amounted to any error, let alone plain error.

{¶ 24} Under Crim.R. 52(B), plain errors are any "errors or defects affecting substantial rights [and] may be noticed although they were not brought to the

attention of the court." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. To prevail on a claim of plain error, it must be shown "that there was an error, that the error was plain or obvious, that but for the error the outcome of the proceeding would have been otherwise, and that reversal must be necessary to correct a manifest miscarriage of justice." *State v. Buttery,* 2020-Ohio-2998, ¶ 7, citing *State v. Quarterman,* 2014-Ohio-4034, ¶ 16.

{¶ 25} At trial, Webb argued that the evidence did not support the charged crime of patient abuse. During his opening statement, as well as his closing argument, Webb's counsel argued that Webb never knowingly intended to cause Gregory harm. He also argued that the record was insufficient to demonstrate that Webb caused Gregory physical harm. Webb's counsel also made Crim.R. 29 motions for acquittal at the appropriate times challenging the sufficiency of the evidence. In sum, Webb's defense at trial was that the evidence presented by the State was insufficient to support a conviction for patient abuse.

{¶ 26} A self-defense claim, on the contrary, "is an admission of all essential elements of the charged crime, but with the legal recognition that the accused's actions were justified under the circumstances." *State v. Loyed,* 2004-Ohio-3961, ¶ 32 (8th Dist.). Particularly, a defendant claiming self-defense "'concedes he had the purpose to commit the act, but asserts that he was justified in his actions.'" *State v. Davis,* 2021-Ohio-2311, ¶ 38, quoting *State v. Talley,* 2006-Ohio-5322, ¶ 45. Self-

defense "presumes intentional, willful use of force to repel force or escape force." *State v. Champion,* 109 Ohio St.281, 286-287 (1924).

{¶ 27} This court has recognized that "[b]ecause self-defense presumes an intentional, willful use of force, 'when an individual testifies that they did not intend to cause harm, such testimony prevents the individual from claiming self-defense.'" *State v. Grayson,* 2021-Ohio-4312, ¶ 25 (8th Dist.), quoting *State v. Davis,* 2021-Ohio-2311, ¶ 38 (8th Dist.). *See also State v. Hubbard,* 2013-Ohio-2735, ¶ 54 (10th Dist.) (noting that "[d]efendant's testimony that he did not fire his gun with the intention of harming anyone prevented defendant from claiming that he shot his gun in an attempt to repel force with force").

{¶ 28} Trial counsel neither requested an instruction on self-defense nor objected to the lack of a self-defense instruction. Rather, Webb's theory of the case was that the State failed to meet the elements of patient abuse, which included a showing that Webb knowingly caused physical harm to Gregory or that Gregory suffered actual physical harm as a result. "Where the failure to request a jury instruction is the result of a deliberate, tactical decision on the part of trial counsel, it is not plain error." *Hubbard* at ¶ 35. *See also State v. Clayton,* 62 Ohio St. 45, 47-48 (1980). As a general proposition, an appellate court presumes the competence of licensed counsel and will defer to counsel on matters of trial strategy. *See State*

*v. Kamleh,* 2012-Ohio-2061, ¶ 51 (8th Dist.), citing *State v. Carter,* 72 Ohio St.3d 545, 558 (1995).

{¶ 29} Based upon the review of the record, it is clear that Webb's defense at trial sought to convince the jury that he did not knowingly cause physical harm to Gregory nor that Gregory suffered physical harm as a result of this incident. Therefore, we conclude that the jury would have been precluded from receiving an instruction with respect to self-defense and that the failure to instruct the jury on self-defense was proper. No error, let alone plain error, occurred as a result.

{¶ 30} Accordingly, Webb's second assignment of error is overruled.

## III. Conclusion

{¶ 31} We affirm Webb's convictions for patient abuse. Webb's conviction was supported by sufficient evidence wherein the State presented evidence to each element of the offense. Further, the failure to instruct the jury on self-defense was not error since a self-defense instruction was precluded as a result of the defense Webb raised at trial.

{¶ 32} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.


_____
MICHELLE J. SHEEHAN, PRESIDING JUDGE

MICHAEL JOHN RYAN, J., and
WILLIAM A. KLATT, J.,* CONCUR

(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of
Appeals.)