OPINION
{¶ 1} Respondent-appellant, Ronnie Cox ("appellant"), appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, granting petitioner-appellee's, Anisha Bradley ("appellee"), petition for a civil protection order ("CPO"). For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} Appellee and appellant cohabitated in appellant's apartment from August 2001 until December 2003. The parties broke up on November 21, 2003 and upon agreement, appellant left the apartment on December 15, 2003. Appellee and appellant have one child in common, Ronnie, Jr. Appellee has another child, a daughter named Aija, who is not appellant's biological child, but who has formed a relationship with appellant. (Tr. 8-9.)
 {¶ 3} On Saturday, January 24, 2004, appellee went to Cincinnati, Ohio. Upon her return to Columbus, Ohio, on Sunday, January 25, 2004, appellee contacted appellant to see if he wanted to see Ronnie, Jr. and Aija. The children spent the night with appellant and he dropped them off at school the following Monday morning. Appellant then went to appellee's apartment to drop off the children's belongings. Once appellant got there, an argument ensued between the two. Appellee testified that appellant told her:
* * * [I]f he saw me with anyone, that he would kill me and the person. He said that I better be glad that he wasn't in the parking lot and went to the wrong club that night. If he had seen me hugged up with the guy, he would have shot up the parking lot and shot us all.
* * * [H]e also said that he was going to have his cousins come over and knock on my door and beat me up.
He also said that he has friends that have AK-47s. They have big guns, they're going to spray everybody.
(Tr. 12.)
 {¶ 4} Appellee testified that appellant also threatened her children. (Tr. 14.) Appellee was afraid and took appellant's threats seriously. Appellee testified that appellant was disgruntled because the two were not going to get back together. Appellee called the police in order to get appellant to leave. Appellee later went down to the prosecutor's office to file charges against appellant. According to appellee, the prosecutor's office did not file charges, but advised appellee to get a CPO. (Tr. at 48-49.)
 {¶ 5} Appellee petitioned for a CPO, pursuant to R.C.3113.31, on behalf of Aija, Ronnie, Jr., and herself. On January 26, 2004, the trial court granted an ex parte CPO order on behalf of appellee and her two minor children.
 {¶ 6} A full hearing was conducted on February 3, 2004. At the hearing, appellant testified that he never threatened appellee or her children and he never threatened to have someone else harm appellee. (Tr. 72, 77, 85.) At the conclusion of the hearing, the trial court issued an order of protection effective until February 3, 2009 as to appellee only. The trial court dismissed the CPO against the children. The court ordered that appellant can have supervised visits with Ronnie Jr. through Welcome To Our Place. It is from this order that appellant appeals, assigning the following assignments of error:
ASSIGNMENT OF ERROR NO. 1
(1) The trial court's order granting the Civil Protection Order is against the manifest weight of the evidence[.]
ASSIGNMENT OF ERROR NO. 2
(2) The trial court erred and abused its discretion by allowing Plaintiff-Appellant to testify to evidence not relevant to the complaint[.]
ASSIGNMENT OF ERROR NO. 3
(3) The trial court erred and abused its discretion by finding the Appellee met the standard of proof[.]
ASSIGNMENT OF ERROR NO. 4
(4) The trial court erred and abused its discretion by not affording appellant due process to present a closing argument at the hearing.
 {¶ 7} Appellant's first and third assignments of error are interrelated and, as such, will be addressed together. Appellant maintains that the trial court's decision to grant the CPO was against the manifest weight of the evidence because the evidence presented by appellee demonstrated that the threats made by appellant were not sufficient and did not meet the requisite burden of proof justifying the trial court's determination that appellee was in danger.
 {¶ 8} The decision whether to grant a civil protection order lies within the sound discretion of the trial court. Parrish v.Parrish (2002), 95 Ohio St.3d 1201, 1204. We presume that the findings of the trial court are correct, because the trial court can view the witnesses and weigh the credibility of the parties' testimony. Seasons Coal Co., Inc. v. City of Cleveland (1984),10 Ohio St.3d 77, 80. We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. State v. Jamison (1990), 49 Ohio St.3d 182, certiorari denied 498 U.S. 881, 111 S.Ct. 228.
 {¶ 9} Thus, we will not reverse the trial court's decision for being contrary to the manifest weight of the evidence if there is some competent, credible evidence going to the essential elements of the case. C.E. Morris Co. v. Foley Constr. Co.
(1978), 54 Ohio St.2d 279, syllabus; Myers v. Garson (1993),66 Ohio St.3d 610 (a reviewing court must not substitute its judgment for that of the trial court where there exists some competent, credible evidence supporting the judgment rendered by the trial court).
 {¶ 10} A person seeking a CPO must prove domestic violence or threat of domestic violence by a preponderance of the evidence.Felton v. Felton (1997), 79 Ohio St.3d 34, syllabus at paragraph two. R.C. 3113.31(A)(1) defines "domestic violence," in relevant part, as:
* * * [T]he occurrence of one or more of the following acts against a family or household member:
(a) Attempting to cause or recklessly causing bodily injury;
(b) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 or 2911.211 of the Revised Code[.]
(Emphasis added.)
 {¶ 11} In this case, the trial court based its issuance of the CPO upon appellant's threat to cause bodily injury to appellee. Appellee testified that appellant threatened to kill her. Appellee further testified that appellant's threats placed her in fear of imminent serious physical harm as required by R.C.3113.31(A)(1). Appellee testified that although appellant had threatened her in the past, his previous threats had not risen to the level of threats he made on January 26, 2004. Appellee testified that she took appellant's threats seriously and that she was afraid.
 {¶ 12} Appellant maintains that appellee offered no corroborating witnesses to the alleged threats. It was not essential that appellee corroborate her testimony with other witnesses. "Domestic violence is seldom committed in the presence of eyewitnesses. * * * Often the only evidence of domestic violence is the testimony of the victim." Felton at 44.
 {¶ 13} The trial court, presented with two different versions of the relationship between the parties, essentially found appellee's version to be more credible. Therefore, after having reviewed the complete record, we find that the record contained competent, credible evidence to support the trial court's conclusion that appellant's threats placed appellee in fear of imminent serious physical harm. We find no evidence that the trial court clearly lost its way and created such a manifest injustice as to require a reversal. The decision to grant the CPO was not against the manifest weight of the evidence. As such, appellant's first and third assignments of error are not well-taken.
 {¶ 14} In his second assignment of error, appellant contends that the trial court abused its discretion by expanding the scope of the hearing beyond the complaint and allowed irrelevant evidence to be presented during the hearing. Specifically, appellant argues that appellee testified about appellant spending time with the children, appellant's financial support of Ronnie, Jr., and the issue of appellant testifying on behalf of appellee in a custody matter involving Aija and Aija's biological father.
 {¶ 15} The admission or exclusion of evidence rests in the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus. In order to be admissible, evidence must be relevant. Evid.R. 402. Evid.R. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."
 {¶ 16} At the onset, we note that appellant failed to object to the allegedly irrelevant evidence, when the statements were initially made by appellee. That failure to object constitutes a waiver of error, if any, involved. Therefore, our analysis must proceed under the "plain error" analysis. In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error seriously affects the basic fairness, integrity, or public reputation of the judicial process itself.Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, syllabus.
 {¶ 17} Upon review of the record, we find that the testimony complained of, even if improper, was not plain error. Interestingly enough, appellant's counsel, on cross-examination, questioned appellee about her current employment status. Appellee's counsel objected, which was overruled by the trial court. Furthermore, appellant's counsel requested that the taped telephone messages be re-played. Appellant now argues that the taped recorded messages are irrelevant evidence. Appellant's arguments are unpersuasive. We find no error in the admission of appellee's testimony, much less plain error, and appellant's second assignment of error lacks merit and is not well-taken.
 {¶ 18} In his final assignment of error, appellant maintains that the trial court denied him his due process right to a full hearing, by denying appellant's counsel the opportunity to present a closing argument. R.C. 3113.31 does not define the term "full hearing." Deacon v. Landers (1990), 68 Ohio App.3d 26,29. However, the Fourth Appellate District in Deacon held that "where the issuance of a protection order is contested, * * * the court must, at the very least, allow for presentation of evidence, both direct and rebuttal, as well as arguments." Id. at 30.
 {¶ 19} In this case, it is clear from the record that appellant was given the opportunity to cross-examine appellee and present rebuttal evidence. After appellant rested his case, the trial court, without hearing closing arguments, rendered its decision and issued the CPO. Appellant's counsel requested the opportunity to present closing arguments:
MR. McCORD: * * * Your Honor, first of all, you didn't let either side give a closing argument.
THE COURT: May the record show it is 20 until 2 o'clock. We have been here from 11 o'clock without a break. We're going to take a break before you do that.
MR. McCORD: I wish to put on a closing argument. * * *
(Tr. 91.)
 {¶ 20} Appellant's counsel then proceeded to argue, at length, why the CPO should not be issued against his client. (Tr. 91-93.) Thereafter, the following exchange took place:
THE COURT: Sir, you're becoming argumentative. You may appeal this, but I'm asking that we bring this to closure.
MR. McCORD: Can I do my closing argument, Your Honor?
THE COURT: After all you just said?
MR. McCORD: They put on their case. I put on my case. They get a closing argument and —
THE COURT: I don't know that the law says you each have a closing argument. And I'd like to think that you would waive your closing argument and we would move ahead.
* * * If you want to do a closing, would you please do it in writing and submit it to the Court within — like tomorrow.
MR. McCORD: I can't do it, a written closing argument, by tomorrow.
THE COURT: Then would you like to waive it and move ahead?
MR. McCORD: I'm not waiving it. The Court can't say you don't have a closing argument. The Court made it's mind up before the closing argument. I don't know how the Court can do that.
* * *
THE COURT: * * * I really did not know the Court had to give closing argument.
(Tr. 93-95.)
 {¶ 21} The trial court did not entertain closing argument from either party, however, the trial court afforded appellant's counsel the opportunity to submit his closing argument in writing. Appellant's counsel said that he could not have a written closing argument submitted to the trial court within one day. Counsel also did not want to waive his right to make closing arguments. The trial court heard argument from appellant's counsel during the course of trial and afforded counsel the opportunity to submit written briefs. Appellant's counsel was given full opportunity to argue his client's case. Such action by the trial court was a limitation to closing argument, and not a denial. The trial court has broad discretion to control the proceedings before it. State ex rel. Butler v. Demis (1981),66 Ohio St.2d 123, 128. A trial court's limitation in closing arguments should not be reversed absent an abuse of discretion. See, Pang v. Minch (1990), 53 Ohio St.3d 186. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. Even if the trial court abused its discretion in limiting appellant's counsel's closing argument, appellant has failed to demonstrate how that error prejudiced his client.
 {¶ 22} In this case, the record does not show that the trial court's decisions limiting closing arguments was so unreasonable, arbitrary or unconscionable as to connote an abuse of discretion.State v. Davis (1991), 62 Ohio St.3d 326, 340. As such, appellant's due process rights under R.C. 3113.31 were not violated. Accordingly, appellant's fourth assignment of error lacks merit.
 {¶ 23} For the foregoing reasons, appellant's four assignments of error are overruled and the decision of the Franklin County Court of Common Pleas, Division of Domestic Relations, is affirmed.
Judgment affirmed.
 Bowman and Deshler, JJ., concur.
Deshler, J., retired, of the Tenth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.