[Cite as *J.M. v. M.M.*, 2016-Ohio-5368.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | | |

J. M.

     Appellee

     v.

M. M.

     Appellant

C.A. No.     15CA0057-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.     15DV0113

DECISION AND JOURNAL ENTRY

Dated: August 15, 2016

---

SCHAFER, Judge.

{¶1} Respondent-Appellant, M.M. ("Father"), appeals the judgment of the Medina County Court of Common Pleas, Domestic Relations Division, granting a domestic violence civil protection order in favor of Petitioner-Appellee, J.M. ("Mother"), and their two children, G.M. and A.M. We reverse.

I.

{¶2} Mother and Father were divorced in 2008 after approximately 15 years of marriage. The parties have two minor children, G.M., and A.M. As part of the parties' shared parenting plan, Father was granted parenting time with his three children. In 2014, Father was exercising his parenting time when a physical altercation transpired between him and his two teenage sons, G.M. and A.M. This altercation resulted in G.M. and A.M. being charged with aggravated assault against their father in the Medina County Court of Common Pleas, Juvenile Division, where the Juvenile Court ultimately adjudicated the children delinquent. The Juvenile

Court ordered that Father's parenting time with his children be held only in public places and prohibited Father from transporting G.M. and A.M. If G.M. and A.M. did not cooperate with the Juvenile Court's visitation order, they faced a potential penalty of 86 days in juvenile detention.

{¶3} On May 15, 2015, Mother and Father agreed to meet in a public place so that Father could exercise his parenting time with G.M. and A.M. The location that the parties mutually selected was a McDonald's restaurant in Jackson Township, Ohio, which is located directly across the street from Walsh University. Mother testified that she and her two sons arrived at the McDonald's at 6:00 p.m. and waited inside the restaurant for Father to arrive. According to Mother, Father's mother arrived to pick up the children and take them back to her house where they would visit with Father. However, G.M. and A.M. both refused to go with their grandmother because they were only permitted to visit with their father in a public place, per the Juvenile Court's visitation order. The grandmother then called Father and informed him of the children's refusal to go home with her. Father subsequently drove to the McDonald's to confront his sons and ex-wife.

{¶4} Mother testified that when Father arrived at the McDonald's, he appeared very agitated and instructed his sons to leave with their grandmother or else he would call the police and have them sent to juvenile detention. G.M. and A.M. again refused to leave, citing the Juvenile Court's visitation order. According to Mother, Father sat down nearly on top of A.M. in one of the booths and yelled in A.M.'s ear that if he and his brother did not leave with their grandmother, they would go to juvenile detention. Mother testified that Father's actions and demeanor made G.M. feel uncomfortable, to the point where G.M. walked away and sat down at another table. When the boys again refused to leave the McDonald's, Father began filming

everybody on his cellphone, which Mother said frightened and intimidated her. Father then called the police and walked outside of the restaurant.

{¶5} Two police officers soon arrived at the scene, where one officer spoke with Father and the two children outside of the restaurant while the other officer spoke to Mother inside of the McDonald's. G.M. and A.M. soon rejoined their mother inside of the restaurant, where they all waited for Father to drive away. When Father did not leave after several minutes, one of the officers escorted Mother and her two sons to their vehicle. As Mother attempted to drive out of the McDonald's parking lot, she observed Father in his truck waiting for them to leave, as if he was going to follow them once they pulled out of the McDonald's driveway. Sensing that Father was trying to follow them, Mother quickly drove across the street into the Walsh University parking lot in an effort to lose Father. However, Father quickly followed Mother's vehicle and "chase[d] [her] through the parking lot" at a speed of approximately 20 miles per hour. Upon noticing Father driving "on [her] tail," Mother elected to turn around and drive back to the McDonald's parking lot, where the police officers were still located. Upon entering the McDonald's parking lot, one of the police officers waved for Mother to drive back towards him. Father followed Mother's vehicle in his truck, but when the police officers approached his truck, Father drove away.

{¶6} On May 18, 2015, Mother petitioned for a domestic violence civil protection order on behalf of herself and the parties' three children, C.M., G.M., and A.M. A magistrate held a full evidentiary hearing on Mother's petition on May 25, 2015. At the full hearing, both parties were represented by counsel, were provided with an opportunity to testify and ask questions of the other party, and were given an opportunity to present evidence. Mother testified at the full hearing that Father's conduct on the day in question made her feel intimidated, unsafe,

and afraid. Mother stated that she filed for the domestic violence civil protection order because she was "scared to death of [Father]", not only because of his actions on the day in question, but also because of his "lengthy history of abuse" against her and their children, which has transpired "numerous times over multiple years."

{¶7} At the conclusion of the hearing, the magistrate issued a five-year domestic violence civil protection order that named Mother, G.M., and A.M. as protected persons. The trial court approved and adopted the domestic violence civil protection order.

{¶8} Father filed this timely appeal, raising three assignments of error for this Court's review.

II.

**Assignment of Error I**

**The trial court erred as a matter of law and abused its discretion in finding by a preponderance of the evidence that [Petitioner] or [Petitioner's] family or household members are in danger or have been a victim of domestic violence or sexually oriented offenses denied in R.C. 3113.31(A) committed by [Respondent].**

{¶9} In his first assignment of error, Father argues that Mother failed to offer sufficient evidence to support the issuance of a domestic violence civil protection order against him. Specifically, Father contends that Mother presented insufficient evidence demonstrating that Father committed an act of domestic violence against either her or their children. We agree.

{¶10} "'In order to grant a [domestic violence civil protection order], the court must conclude that the petitioner has demonstrated by a preponderance of the evidence that the petitioner * * * [is] in danger of domestic violence.'" *M.K. v. J.K.,* 9th Dist. Medina No. 13CA0085–M, 2015–Ohio–434, ¶ 7, quoting *B.C. v. A.S.,* 9th Dist. Medina No. 13CA0020–M, 2014–Ohio–1326, ¶ 7. When assessing the sufficiency of the evidence for a trial court's decision

to grant a civil protection order, "we must determine whether, viewing the evidence in the light most favorable to [the petitioner], a reasonable trier of fact could find that the petitioner demonstrated by a preponderance of the evidence that a civil protection order should issue." *R.C. v. J.G.,* 9th Dist. Medina No. 12CA0081–M, 2013–Ohio–4265, ¶ 7, citing *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012–Ohio–2179, ¶ 11, and *State v. Jenks,* 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. A sufficiency challenge tests the adequacy of the evidence. *Eastley* at ¶ 11. In applying the sufficiency standard, "'we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact.'" *State v. Jarvis*, 9th Dist. Lorain No. 14CA010667, 2015-Ohio-4219, ¶ 10, quoting *State v. Jones,* 1st Dist. Hamilton Nos. C–120570, C–120571, 2013–Ohio–4775, ¶ 33.

{¶11} Here, the trial court decided to issue the domestic violence civil protection order based on its determination that the parties are "family or household members" as the phrase is defined in R.C. 3113.31(A)(3), that Mother or members of Mother's family or household are in danger of or have been a victim of domestic violence by Father, and that the issuance of a domestic violence civil protection order is "equitable, fair, and necessary to protect" Mother and her children from future domestic violence. Father does not contest the trial court's finding that he and the Petitioners are family or household members. Rather, Father disputes the trial court's finding that he committed an act of "domestic violence," as the phrase is defined under Ohio law.

{¶12} As defined in R.C. 3113.31(A)(1), the phrase "domestic violence" means the occurrence of one or more of the following acts against a family or household member:

(a) Attempting to cause or recklessly causing bodily injury;

(b) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 or 2911.211 of the Revised Code;

(c) Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code;

(d) Committing a sexually oriented offense.

In its order granting Mother's petition for a domestic violence civil protection order, the trial court did not specify which subsection of R.C. 3113.31(A)(1) that Father was found to have committed. At the outset, we note that the only three subsections even remotely applicable to the facts in the instant matter are R.C. 3113.31(A)(1)(a), (b), and (c). As such, we will address each relevant subsection of R.C. 3113.31(A)(1) to determine whether sufficient evidence was presented at the full hearing to justify the trial court's issuance of a domestic violence civil protection order.

### A. Attempting to Cause or Recklessly Causing Bodily Injury

{¶13} The magistrate might have found Father to have violated section A of this provision which prohibits "attempting to cause or recklessly causing bodily injury." Bodily injury encompasses "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3) (defining "physical harm to persons"). "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist." R.C. 2901.22(C).

{¶14} After a thorough review of the record, we determine that insufficient evidence was presented to warrant the issuance of a domestic violence civil protection order pursuant to R.C. 3113.31(A)(1)(a). None of the evidence presented during the full hearing on Mother's petition demonstrated by a preponderance of the evidence that Father attempted to cause bodily

injury to any of the Petitioners in this matter. In support of her argument that Father committed an act of domestic violence under this subsection, Mother points to the fact that Father followed and "tailed" her car in the Walsh University parking lot at a speed of 20 miles per hour. Mother notes on appeal that a car can be used as a deadly weapon, and thus Father's conduct of following her in a car constitutes an act of domestic violence. Moreover, Mother testified that this conduct by Father greatly frightened and intimidated her. However, we conclude that Mother's argument is without merit, as we cannot conclude that following another car at a relatively low rate of speed in a parking lot, standing alone, constitutes an act of domestic violence pursuant to R.C. 3113.31(A)(1)(a).

### B. Fear of Imminent Serious Physical Harm

{¶15} Next, Father argues that insufficient evidence was presented at the full hearing to warrant the issuance of a domestic violence civil protection order under R.C. 3113.31(A)(1)(b), prescribing placing a family member in fear of imminent serious physical harm. When reviewing a finding of domestic abuse under R.C. 3113.31(A)(1)(b), "the critical inquiry is 'whether a reasonable person would be placed in fear of imminent (in the sense of unconditional, non-contingent) serious physical harm[.]'" *State v. McKinney,* 9th Dist. Summit No. 24430, 2009–Ohio–2225, ¶ 11, quoting *State v. Tackett,* 4th Dist. Jackson No. 04CA12, 2005–Ohio–1437, ¶ 14. In carrying out this inquiry, we refer to the Petitioners' history with the respondent. *E.g., Wohleber v. Wohleber,* 9th Dist. Lorain No. 10CA009924, 2011–Ohio–6696, ¶ 13. However, previous incidents of domestic violence do not support a finding that the Petitioners' fear of imminent serious physical harm was reasonable "'absent an initial, explicit indication that [they were] in fear of imminent serious physical harm on the date contained in the petition.'" *Chafin v. Chafin,* 9th Dist. Lorain No. 09CA009721, 2010–Ohio–3939, ¶ 22, quoting *Fleckner v.*

*Fleckner,* 177 Ohio App.3d 706, 2008–Ohio–4000, ¶ 27 (10th Dist.); *see also Wetterman v. B.C.,* 9th Dist. Medina No. 12CA0021–M, 2013–Ohio–57, ¶ 11 ("The purpose of the civil protection order is not to address past abuse."). Additionally, "both the totality of the circumstances, as well as the victim's state of mind, are relevant to the determination that the threat of harm was imminent." *Chafin* at ¶ 22.

**{¶16}** R.C. 2901.01(A)(1) defines "force" as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." "Serious physical harm," on the other hand, is defined as any of the following:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5).

**{¶17}** At the full evidentiary hearing, Mother supported her petition with her own testimony. Mother cites the following in support of her argument that she and her sons are in fear of imminent serious physical harm from Father: (1) that Father closely followed them in his truck in the Walsh University parking lot at a speed of roughly 20 miles per hour; (2) that Father physically assaulted her during their marriage and she has obtained a domestic violence civil protection order against him in the past; (3) that Father assaulted their two minor sons roughly six months before the date in question; (4) that Father continues to harass and verbally abuse her,

including making insulting comments about her weight while at the McDonald's on the day in question; (5) that Father sat nearly on top of A.M. while at the McDonald's and loudly yelled in the child's year demanding that he leave with their grandmother; (6) that Father videotaped his two sons in the McDonald's and threatened to call the police on them if they did not leave with their grandmother; (7) that Father videotaped her in the McDonald's and yelled at her in public; and (8) that Father assaulted a police officer in the past. Mother testified at the full hearing that Father's conduct on the day in question made her feel intimidated, unsafe, and afraid. Mother stated that she filed for the domestic violence civil protection order because she was "scared to death of [Father]", not only because of his actions on the day in question, but also because of his "lengthy history of abuse" against her and their children, which has transpired "numerous times over multiple years."

{¶18} After carefully reviewing the record and considering the evidence in a light most favorable to Mother, we conclude that insufficient evidence was presented from which the trial court could have found that Father made a *recent* threat of domestic violence upon which Mother could reasonably fear imminent harm either to herself or to her minor children. To begin, there was no competent, credible evidence presented at the full hearing to support Mother's contention that Father assaulted their two sons in 2014 or that Father assaulted a police officer in the past. Indeed, with regard to the allegation that Father assaulted their two sons in 2014, the Medina County Court of Common Pleas, Juvenile Division, has already adjudicated G.M. and A.M. delinquent for this incident based upon the children's own admission.

{¶19} With regard to Father's aforementioned conduct on May 15, 2015, we similarly determine that insufficient evidence was presented to warrant a domestic violence civil protection order under R.C. 3113.31(A)(1)(b). The May 15, 2015 incident did not involve Father

making any threats of violence and, outside of Father sitting "nearly atop" of A.M. and yelling in the boy's ear, did not involve any contact between the parties. Rather, the record reflects that Father became frustrated and irate when his children refused to leave the McDonald's with their paternal grandmother. We conclude that Father's conduct inside of the McDonald's restaurant, while not to be condoned, did not rise to the level of domestic abuse. *See Young v. Young*, 2d Dist. Greene No. 2005-CA-19, 2006-Ohio-978, ¶ 107 ("[Respondent] may have acted childishly and inappropriately * * *, but that is not a basis for a civil protection order.")

**{¶20}** Even Mother admitted at the full hearing that her fear of Father stemmed not only from Father's temperament on the day in question, but also from a lengthy history of verbal and physical abuse at the hands of Father, which dates back several years. However, while evidence of past abuse "is relevant and may be an important factor in determining whether [Mother] had a reasonable fear of further harm," *Wetterman*, 2013-Ohio-57, at ¶ 12, we must consider both the victim's state of mind and the totality of the circumstances when determining whether a reasonable fear or present harm existed, *Chafin*, 2010-Ohio-3939, ¶ 22. And, after a careful examination of the record, we determine that the record does not disclose that Mother had a reasonable fear of imminent physical harm. The only plausible basis for Mother fearing imminent serious harm at the hands of Father would have been the so-called car chase in the Walsh University parking lot. But, Mother admitted that the "car chase" occurred at a relatively slow rate of speed. Additionally, this encounter did not result in Father being arrested, despite the fact that the police were present at the time. Based on the foregoing, we conclude that Mother's fear of Father was not reasonable and could not sustain a finding of domestic violence of the issuance of a domestic violence civil protection order under R.C. 3113.31(A)(1)(b).

### C. Committing an Act with Respect to a Child that Would Result in the Child Being an Abused Child

{¶21} Lastly, Father argues that insufficient evidence was presented at the full hearing to warrant the issuance of a domestic violence civil protection order under R.C. 3113.31(A)(1)(c). Under this subsection of the statute, domestic violence includes "[c]ommitting any act with respect to a child that would result in the child being an abused child." As relevant to this case, an "abused child" includes any child who "[i]s endangered as defined in section 2919.22 of the Revised Code, except that the court need not find that any person has been convicted under that section in order to find that the child is an abused child." R.C. 2151.031(B).

{¶22} On appeal, Mother argues that Father committed an act of child endangering by creating "a substantial risk to the health or safety of [their children], by violating a duty of care, protection, or support[.]" R.C. 2919.22(A). Specifically, Mother contends that by engaging "in the car chase through the Walsh U[niversity] parking lot, [Father] * * * attempted to inflict physical harm * * * upon [G.M. and A.M.] who were in [Mother's] car." A "substantial risk" is defined as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8).

{¶23} After reviewing the record in this matter, we determine that insufficient evidence was presented to warrant the issuance of a domestic violence civil protection order pursuant to R.C. 3113.31(A)(1)(c). As noted earlier, Mother conceded at the full hearing that the "car chase" occurred at a relatively low speed of approximately 20 miles per hour and that this encounter did not result in Father being arrested, despite the fact that the police were present at the time of the incident. While Mother is correct in noting that a vehicle can be used as a "deadly weapon,"

there is no evidence in the record to suggest that Father intended to inflict serious bodily harm to his children when he followed Mother's vehicle through the Walsh University parking lot on the day in question or that injury to the teenage boys was a strong probability as opposed to a remote or significant possibility. As such, we conclude that no evidence presented during the full hearing on Mother's petition demonstrated by a preponderance of the evidence that Father committed an act with respect to either of his children that resulted in either G.M. or A.M. being an abused child.

{¶24} Accordingly, we determine that the trial court erred by granting Mother's petition for a domestic violence civil protection order on behalf of herself and her two sons. Accordingly, Father's first assignment of error is sustained.

### Assignment of Error II

**The trial court's decision to grant [Petitioner's] petition for a domestic violence civil protection order is against the manifest weight of the evidence.**

### Assignment of Error III

**The trial court erred, abused its discretion and denied [Respondent] due process by adding a provision to a preexisting Medina County Juvenile Court visitation order when the trial court lacked jurisdiction to add such provision and when such new provision was subject to more than one interpretation.**

{¶25} Our resolution of Father's first assignment of error renders his second and third assignments of error moot and we decline to address them. *See* App.R. 12(A)(1)(c).

III.

{¶26} Having sustained Father's first assignment of error, we reverse the judgment of the Medina County Court of Common Pleas, Domestic Relations Division and remand this matter for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

JULIE A. SCHAFER
FOR THE COURT

MOORE, P. J.
CONCURS.

HENSAL, J.
DISSENTING.

{¶27} I respectfully dissent.  As the majority points out, domestic violence under Revised Code Section 3113.31(A)(1)(b) includes "[p]lacing another person by the threat of force in fear of imminent serious physical harm * * *."  In light of the evidence presented at the

evidentiary hearing, including testimony regarding M.M.'s actions on May 15, 2015, as well as testimony regarding past incidents of abuse, I would hold that sufficient evidence existed for purposes of establishing that J.M. was "in fear of imminent serious physical harm[.]"

{¶28} To the extent that the majority concludes that M.M. did not threaten force against J.M. as required under Section 3113.31(A)(1)(b), "threats need not be verbalized * * * [and] can be apparent from conduct." *Williams v. Hupp*, 7th Dist. Mahoning No. 10 MA 112, 2011-Ohio-3403, ¶ 25; *Siouffi v. Siouffi*, 2d Dist. Montgomery No. 17113, 1998 WL 879255, *3 (Dec. 18, 1998) (stating that "a threat of force need not be conveyed expressly; it may just as well be conveyed implicitly by conduct. Conduct which is threatening in nature is no less threatening simply because it is unaccompanied by verbal expressions of the threat."). Based upon the testimony adduced at the hearing, I would hold that J.M. presented sufficient evidence to establish a threat of force, which – while not explicit – can be implied by M.M.'s conduct.

{¶29} In light of the foregoing, I would overrule M.M.'s first assignment of error and address the merits of his second and third assignments of error.

APPEARANCES:

GERALD D. PISZCZEK, Attorney at Law, for Appellant.

JACQUENETTE S. CORGAN, Attorney at Law, for Appellee.