[Cite as *J.R. v. E.H.*, 2017-Ohio-516.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| [J.R.], | : | |
| Petitioner-Appellant, | : | |
| | : | No. 16AP-431 |
| v. | : | (C.P.C. No. 16DV-02-0220) |
| [E.H.], | : | (REGULAR CALENDAR) |
| Respondent-Appellee. | : | |

D E C I S I O N

Rendered on February 14, 2017

**On brief:** *Capital University Law School Family Advocacy Clinic*, *Ryan Sander*, and *Lorie McCaughan*, for appellant. **Argued:** *Ryan Sander* and *Lorie McCaughan*.

**On brief:** *Vassy Law Office*, and *Nicholas E. Vassy*, for appellee. **Argued:** *Nicholas E. Vassy*.

APPEAL from the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch

SADLER, J.

{¶ 1} Petitioner-appellant, J.R., appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, denying her petition for a civil protection order ("CPO"). For the reasons that follow, we reverse.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Appellant and respondent-appellee, E.H., began a relationship in 2010. They lived together in appellant's home until June 2014 when appellee moved out. Though the relationship continued "on and off" until December 2015, the testimony of the parties establishes that the relationship was acrimonious. (Tr. at 7.) In her testimony, appellant referred to appellee as her ex-fiancé and stated that appellee was "very abusive

the whole relationship."  (Tr. at 8.)  During the six-year relationship, appellant had filed criminal charges against appellee on two occasions based on alleged threats of violence by appellee.  On one occasion, the court dismissed the charges due to the lack of evidence, and on the other, the case was dismissed on motion of the prosecutor.  Appellant had also petitioned the court for a CPO on three occasions previous to the petition at issue in this case.  Appellant acknowledged that she did not appear to give testimony in support of her three previous petitions and that the court had dismissed the petitions.

{¶ 3}  On February 12, 2016, appellant filed the instant petition alleging three separate incidents of domestic violence.  Appellant testified that the most recent incident occurred in January 2016 after the relationship had ended.  According to appellant, appellee entered her home without permission at 3:00 a.m., pointed a 9 mm handgun in her face as she lay in bed, and told her "I will shoot you like your dad did your mom."  (Tr. at 8.)  According to appellant, on that day, appellee left the residence without further incident but left the weapon behind.  Appellant testified that she took her children to a motel for the night because she feared appellee might return.  She also changed the locks at her house because appellee still had a key.

{¶ 4}  Appellant testified that on December 26, 2015, she and appellee got into an argument which culminated in a "shoving match."  (Tr. at 9.)  Appellant maintained that she filed a police report regarding the incident and went to Florida for three weeks.

{¶ 5}  With respect to the incident that occurred on October 26, 2015, appellant testified as follows:

> I asked him to get out of the truck.  We were leaving my mother's barn in London, Ohio.  I asked [appellee] numerous times to get out of my truck because he just started being mentally and verbally abusive at that moment and it was starting to be a screaming match.  He was drunk and I was, like, I am not doing this with you.  He tries to take my truck into oncoming traffic and said, Bitch, I will just kill us right here.  Then 20 minutes go by, and I am trying to find an exit that is lit up.  It is 3:00 a.m.  Trying to find an exit to go in public, I then pull into a truck stop on Wilson and Interchange Drive off of 70 West, I go into the gas station, and my phone, it started recording but to my knowledge I knew none of this until days later that my phone even picked up what happened. I go in the gas station and I all looking around and I'll like, oh, my God, there is no one big enough to get him out of my car or

help me in any situation.  So I get back in my truck and I tell him, you know, this is it.  It is over.  You can't do this to me anymore.  And he keeps saying what did I do, and I just said I am tired of what you do.  You verbally attack me, physically attack me, I'm done.  This is not good.

And then I pull out of the parking lot and I am sitting at the light, he then yanks me from the driver's seat into the passenger seat and is pounding my head, my ribs, my face.  I had seven concussions that day. I had a bloody -- like, bloody up here.  He took a chunk out of my arm where he bit me.  I still have the scar from October on my arm, they couldn't even stitch it back up, it is to the bone -- and left me.  Left me there.  Stole my truck right after he did all of that.  He stole my truck and left me there.  His sister came back with the truck.

(Tr. at 10-11.)

{¶ 6}   The trial court admitted an audiotape recording taken from appellant's cell phone as petitioner's exhibit 1.[1] Appellant's counsel played the audiotape during appellant's direct examination, and she identified her voice and that of appellee.  Appellee did not deny that his voice is on the audiotape.  Because no transcription was made, the trial court listened to it in chambers prior to issuing its ruling.

{¶ 7}   In the audiotape recording of the October 26, 2015 incident, appellant can be heard screaming for help and crying during her struggle with appellee.  The audiotape also picked up the voice of a bystander who arrived at the scene after appellee fled in appellant's truck.  The bystander, who identified himself as a firefighter, observed an injury to appellant's wrist and stated it "looks like a burn."  Appellant responded "[h]e bit me."[2]

{¶ 8}   On May 10, 2016, the trial court issued a judgment entry wherein the trial court found "[apppellant] has failed to present any credible or competent evidence to prove her allegations by a preponderance of the evidence."  Appellant timely appealed to this court from the judgment of the trial court.

---

[1] Appellant explained that she has a "domestic violence app" on her cell phone that activates automatically "[w]hen your phone senses elevated arguments."  (Tr. at 32.)  Appellant testified that she played the recording from her cell phone for her trial counsel, and he recorded it on the audiocassette tape.

[2] Appellee conceded at oral argument that the lack of a transcript of the audiocassette tape does not preclude this court from considering its contents in this appeal because the audiocassette is part of the physical record in this case.  Accordingly, we have considered the contents of the audiocassette in ruling on the appeal.

## II. ASSIGNMENT OF ERROR

{¶ 9} Appellant asserts a single assignment of error as follows:

The trial court erred when it denied Appellant's Petition for a Full Domestic Violence Civil Protection Order because the court's ruling was Against the Manifest Weight of the Evidence.

## III. STANDARD OF REVIEW

{¶ 10} This court will not reverse the trial court's decision regarding the issuance of a CPO for being contrary to the manifest weight of the evidence if there is some competent, credible evidence going to the essential elements of the case. *Bradley v. Cox*, 10th Dist No. 04AP-118, 2004-Ohio-4840, ¶ 9, citing *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus. *See also Strassell v. Chapman*, 10th Dist. No. 09AP-793, 2010-Ohio-4376, ¶ 7-9. "We presume that the findings of the trial court are correct, because the trial court can view the witnesses and weigh the credibility of the parties' testimony." *Guthrie v. Long*, 10th Dist. No. 04AP-913, 2005-Ohio-1541, ¶ 13, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). "[T]he weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact." *Guthrie* at ¶ 13, citing *State v. Jamison*, 49 Ohio St.3d 182 (1990), *cert. denied*, 498 U.S. 881.

## IV. LEGAL ANALYSIS

{¶ 11} For purposes of a domestic violence protection order, R.C. 3113.31 defines "Domestic violence," in relevant part, as follows:

(A) As used in this section:

(1) "Domestic violence" means the occurrence of one or more of the following acts against a family or household member:

(a) Attempting to cause or recklessly causing bodily injury;

{¶ 12} R.C. 2901.22 defining culpable mental states, defines "recklessly" as follows:

(C) A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a

substantial and unjustifiable risk that such circumstances are likely to exist.

* * *

(E) When recklessness suffices to establish an element of an offense, then knowledge or purpose is also sufficient culpability for such element.

{¶ 13} Though R.C. 3113.31 does not define the term "bodily injury," we note that for purposes of the offense of domestic violence under R.C. 2901.01(A)(3), "physical harm" to a person means "any injury, regardless of its gravity or duration." *State v. Reynolds*, 10th Dist. No. 03AP-701, 2004-Ohio-3692, ¶ 14.

{¶ 14} At the conclusion of the hearing, the trial court announced its decision on the record as follows:

THE COURT: Back on the record in the matter of Raines versus Hanes, 16DV-220, let the record reflect I have had an opportunity to review the exhibits, and more closely listening to the tape, and I've had an opportunity to review the notes. In regards to the Civil Protective Order and the hearing today, I can state unequivocally the two parties involved should not, repeat, should not be in a relationship. If I were to believe either one of you, there is more than enough conflict here that this relationship should terminate, end of discussion. In regards to the incident in January, I am troubled as to what may or may not have occurred, but the description left some real doubt in my mind.

In regard to the incident that occurred in December, once again, I have a hard time fathoming who started these arguments and how they escalated to the point that people feel the need to run and go to a hotel and, et cetera. *So really the incident that I spent the time trying to understand is the incident in October and how we got to a point that the two of you are beating on each other in a truck and why that occurred. I heard testimony as to injury but, unfortunately, I don't have verification. I hear testimony that the police are a regular person you have contact with on a regular basis, but I don't have any reports to tell me why.* So I have these two large gaps in making my determination as to what occurred and who is the more credible.

> The fact that she has been before this court -- domestic court on numerous prior occasions and been dismissed have no b[e]aring. That is not an uncommon occurrence for domestic violence in the usual so that doesn't tell me anything one way or the other. So having explained to you my thought process, and understanding the significant implications of a Civil Protective Order, I do not find sufficient evidence for the granting of a Civil Protective Order in this matter and the request for the same is hereby denied.

(Emphasis added.) (Tr. at 61-63.)

{¶ 15} The "statutory criterion to determine whether or not to grant a civil protection order pursuant to R.C. 3113.31 is the existence or threatened existence of domestic violence." *Thomas v. Thomas*, 44 Ohio App.3d 6, 8 (10th Dist.1988). *See also Parrish v. Parrish*, 146 Ohio App.3d 640, 644 (4th Dist.2000), citing *Thomas*.[3] Where the evidence establishes that an act of domestic violence occurred, the mandates of R.C. 3113.31 for issuance of the order of protection are satisfied, regardless of the fact that the evidence also establishes that the petitioner no longer has contact with the respondent and, consequently, is no longer fearful of the respondent. *Duncan v. Duncan*, 5th Dist. No. CT2010-0007, 2010-Ohio-5334, *discretionary appeal not allowed*, 127 Ohio St.3d 1503, 2011-Ohio-19. For the purpose of a CPO under R.C. 3113.31(A)(1)(a), "a petitioner need not strictly testify that the respondent placed her in fear of imminent harm when he actually harmed her." *Zawrotuk v. Zawrotuk*, 7th Dist. No. 14 MA 13, 2014-Ohio-5225, ¶ 34. Accordingly, R.C. 3113.31(A)(1)(a) requires the trial court to issue a CPO where the petitioner establishes by a preponderance of the evidence that respondent attempted to cause or recklessly caused bodily injury to petitioner. *Id. See also J.M. v. M.M.*, 9th Dist. No. 15CA0057-M, 2016-Ohio-5368, ¶ 13-14; *Calicoat v. Calicoat*, 2d Dist. No. 08CA32, 2009-Ohio-5869, ¶ 23.

{¶ 16} We are mindful that this is not an appeal from an order granting an ex parte CPO which would have required proof that a CPO was "necessary to protect [appellant] from domestic violence" or the "[i]mmediate and present danger of domestic violence." R.C. 3113.31(D)(1). Similarly, though appellant alleges both that she was entitled to a CPO

---

[3] Appeal dismissed as having been improvidently allowed in *Parrish v. Parrish*, 95 Ohio St.3d 1201, 1207-08 (2002).

under R.C. 3113.31(A)(1)(a) and (b), it is only R.C. 3113.31(A)(1)(b) that requires proof that appellee placed appellant "by the threat of force in fear of imminent serious physical harm." Under R.C. 3113.31(A)(1)(a), a CPO will issue on proof that appellee attempted to cause or recklessly caused bodily injury to appellant regardless of whether appellee also placed appellant in fear of imminent serious physical harm. *Duncan*; *Zawrotuk*. *See also Bullard v. Alley*, 4th Dist. No. 12CA835, 2014-Ohio-1016, ¶ 21 ("Because we determined that some evidence supports the court's finding of domestic violence under R.C. 3113.31(A)(1)(a), we need not also consider whether the evidence supports a finding under R.C. 3113.31(A)(1)(b).").

{¶ 17} Pursuant to R.C. 2923.02, an "attempt" is defined as follows: "(A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." In our view, the trial court's finding that appellant and appellee were "beating on each other in a truck" requires the conclusion that appellee attempted to cause bodily injury to appellant on October 26, 2015. (Tr. at 62.) By finding that appellant failed to produce competent, credible evidence that appellee had committed domestic violence on October 26, 2015, the trial court ignored its own factual finding and mistakenly focused on the absence of proof as to which of the parties started the argument and why the argument escalated to the point of physical violence. In so doing, the trial court imposed an additional burden of proof on appellant that is not required by R.C. 3113.31(A)(1)(a). *See*, *e.g.*, *State v. Boldin*, 11th Dist. No. 2007-G-2808, 2008-Ohio-6408 (a determination of the identity of the primary aggressor is not an element of the offense of domestic violence; it is relevant only to a claim of self-defense); *Crawford v. Brandon*, 12th Dist. No. CA2013-08-150, 2014-Ohio-3659, ¶ 6 (where both parties seek a CPO, it is up to the trial court to assess credibility and to make a determination whether to grant or deny the respective petitions). *See also* R.C. 3113.31(E)(4).[4]

---

[4] Respondent has not filed a separate petition for a protection order in this case. Under R.C. 3113.31(E)(4)(a), "[a] court may not issue a protection order that requires a petitioner to do or to refrain from doing an act that the court may require a respondent to do or to refrain from doing * * * unless * * * [t]he respondent files a separate petition for a protection order in accordance with this section."

{¶ 18} During his direct examination of appellee, appellee's trial counsel asked him about the October 26, 2015 incident:

> Q. Now, there is an argument, do you -- do you -- are you guys both arguing back and forth?
>
> A. Yes. Yeah.
>
> Q. Okay. And then what happens?
>
> A. She went into the gas station, came back out and pulled to the traffic light. It got pretty heated and I slapped the dash. We were yelling at each other. She scratched my face, which the officer I believe took pictures. When she was gouging me right here, I bit her on the backside of her arm, so she has pictures of that also. She jumped out of the vehicle she was driving, ran over, she thought there were officers there and security there and she jumped on the ground and started screaming like she was really hurt. I was scared I was going to be arrested for something I didn't do, so I drove off a couple blocks away to my sister's house and had her take the vehicle back to her.

(Tr. at 48.)

{¶ 19} On redirect, appellee described the event as follows:

> Q. If we can talk briefly about the bite on the arm. Why don't you go a little more in depth as far as what actually physically happened in that vehicle?
>
> A. We were arguing. We were at the stoplight. I had asked her about some guy she was talking to, basically, and she heard -- she -- whenever, like, she gets really angry and screams and she push -- put her hand in my face like this and started scratching me. So, basically, I just pushed her hand up. When I pushed her up, I bit her on the arm and I just pushed her. The next thing I know she gets out the vehicle and she thought she seen two officers, she started running in their direction screaming.
>
> Q. So when that happened were you attempting to, basically, get her away from you?
>
> A. Yeah, I didn't want to be scratched anymore.

(Tr. at 57-58.)

{¶ 20} Under the circumstances of this case, appellee's admission that he intentionally bit appellant on the arm during the domestic altercation that occurred on October 26, 2015 leads the court to conclude that appellee recklessly caused or attempted to cause bodily injury to appellant. *See McElroy v. McElroy*, 5th Dist. No. 15 CA 27, 2016-Ohio-5148, ¶ 33 (petitioner entitled to a CPO even though evidence established that petitioner and respondent were engaged in mutual combat). Though appellee testified that he bit appellant's arm in self-defense, appellee did not file a separate petition for a CPO, and appellee's trial counsel did not expressly argue self-defense in the trial court. Nor has appellee raised the issue in his briefing in this court. Consequently, appellee has arguably waived his claim of self-defense for purposes of this appeal. *See Burke v. Melton*, 8th Dist. No. 81994, 2003-Ohio-7054, ¶ 14 (issue of self-defense not waived for purposes of appeal because the record showed that trial counsel raised the issue in the opening statement).

{¶ 21} Moreover, self-defense is an affirmative defense, which means that appellee had the burden to establish that he caused or attempted to cause bodily injury to appellant in self-defense. *Burke* at ¶ 14. *See also* R.C. 3113.31(E)(4)(d). Because the trial court did not find that appellee acted in self-defense, the trial court must have concluded that appellee failed to meet his burden. *See Burke* at ¶ 15 (trial court need not expressly address the issue of self-defense in proceedings under R.C. 3113.31 where the record does not support the defense).

{¶ 22} In support of the conclusion that appellant failed to produce competent, credible evidence that she was the victim of domestic violence, the trial court also stated that there was no verification that appellant sustained an injury on October 26, 2015. There is, however, no requirement in R.C. 3113.31(A)(1)(5) that appellant prove she suffered a verified bodily injury.[5]

---

[5]The audiotape of the October 26, 2015 incident reveals that a bystander witnessed the injury to appellant's wrist immediately after the altercation. Appellee also acknowledged that appellant had taken a photograph of her injury although she produced no photograph at the hearing. Consequently, even if R.C. 3113.31(A)(1)(a) required a "verified" bodily injury, the record contains such verification. *See, e.g., Boldin* at ¶ 40 ("Domestic violence merely requires a showing of 'physical harm' as defined in R.C. 2901.01(A)(3), which does not require evidence of visible injuries."); *State v. Barnes*, 8th Dist. No. 87153, 2006-Ohio-5239 (even though a victim had no visible injuries after the incident, there was sufficient evidence to support a finding that the victim was physically injured under R.C. 2901.01(A)(3)); *State v. Summers*, 11th Dist. No. 2002-A-0074, 2003-Ohio-5866 (testimony of victim that her boyfriend grabbed her around her neck

{¶ 23} The trial court expressed no determination regarding appellant's credibility. Given the trial court's factual finding that the parties were "beating on each other in a truck," it is evident that the trial court believed some of appellant's testimony regarding the October 26, 2015 incident. Even if the trial court disbelieved all of appellant's testimony regarding the incidents that allegedly occurred in December 2015 and January 2016, the only reasonable conclusion to be drawn from the trial court's factual finding and appellee's admission that he bit appellant on October 26, 2015 is that appellee attempted to cause or recklessly caused bodily injury to appellant during that incident. Because the evidence overwhelmingly supports the conclusion that appellee committed "domestic violence" against appellant on October 26, 2015, appellant satisfied the mandates of R.C. 3113.31(A)(1)(a) for the issuance of a CPO. Accordingly, we hold that the trial court's decision denying appellant's petition for a CPO was against the manifest weight of the evidence.

{¶ 24} For the foregoing reasons, we sustain appellant's sole assignment of error, reverse the judgment of the trial court, and remand this case for the trial court to determine the scope of the domestic violence CPO. R.C. 3113.31(E).

## V. CONCLUSION

{¶ 25} Having sustained appellant's sole assignment of error, we reverse the judgment of the Franklin County Court of Common Pleas, Domestic Division, Juvenile Branch, and remand this matter for the trial court to determine the scope of the domestic violence CPO.

*Judgment reversed;*
*cause remanded with instructions.*

DORRIAN and HORTON, JJ., concur.

———————————————

causing a bruise to appear the next day was sufficient to prove physical harm for purposes of a domestic violence conviction even though the victim admitted she did not seek medical treatment, no one else saw her injury, and no photographs were taken).